## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

...................................................................

In Re:

    **ROCHESTER SERVICE CORP., LLC,**

        Debtor.

**CHAPTER 11**

**CASE NO. 07-32664**

...................................................................

## DEBTOR'S RESPONSE TO MINNWEST BANK CENTRAL'S
## MOTION FOR RELIEF FROM STAY

Rochester Service Corp., LLC ("Debtor") provides this response to the motion for relief from stay filed by Minnwest Bank Central ("Minnwest"). Minnwest is adequately protected by an ample equity cushion, and for the reasons set forth below, Minnwest's motion should be denied.

### FACTS

The facts herein are provided by the affidavit of Hyder Jaweed. Mr. Jaweed is qualified to provide an affidavit due to his status as the Chief Manager of Debtor.[1]

Rochester Service Corp., LLC is a company with its principal asset being a piece of real estate legally described as Lot 3, Block 1, Campustown Subdivision, Olmstead County, Minnesota and is commonly known as the Trail Ridge Apartments in Rochester ("Trail Ridge"). Minnwest holds a note on the property for approximately $2,830,000. Minnwest and the Debtor

---

[1] The Debtor incorporates by reference its bankruptcy schedules and requests that the court take judicial notice thereof as evidence of the debt levels referred to herein. The affidavit of Hyder Jaweed is attached as Exhibit A.

have had an ongoing dispute for the last eight months culminating with a receivership action commenced by Minnwest. The Debtor has been attempting to increase the occupancy of Trail Ridge, but as soon as Trail Ridge became profitable with incrased occupancy, Minnwest would serve the tenants of Trail Ridge with notices of the various legal actions. Debtor is looking for a chance to reorganize without interference from Minnwest to allow the property to thrive.

The Debtor has hired Paramark Corp. ("Paramark") to manage Trail Ridge the $27,000 retainer paid personally by Hyder Jaweed. Paramark has proposed a list of approximately 60 improvements to the property.[2] The Chief Manager of the property has also made numerous improvements to the property recently including:

(1) Boiler installation approximate cost $7800.00;

(2) Sprinker System upgrade $3500.00;

(3) Gutters $1200.00;

(4) Fire Extinguisher $750.00

(5) Painting Hallways $2200.00.[3]

The improvements implemented by the Debtor and Paramark should alleviate any problems with the City of Rochester over the condition of the property.

The Debtor is improving the value of the property by spending personal funds to fix any deficiencies with the property. Hyder Jaweed has a personal guarantee for $2,830,000 on the Trail Ridge property. Given the large personal guarantee, Mr. Jaweed is motivated to refurbish Trail Ridge and reorganize the company. This is evidenced by his willingness to put personal

---

[2]     A copy of the list of improvements is attached as Exhibit B.

[3]     Refer to affidavit of Hyder Jaweed Exhibit A

funds into Trail Ridge. If Minnwest's motion to lift stay is granted they will continue with the receivership action in state court, and will not have the same motivation to rehabilitate the property as the Debtor.

Minnwest has an adequate equity cushion in the property as evidenced by the 2005 appraisal of the property, commissioned by Minnwest placing the value of Trail Ridge at $3,900,000.00.[4] The appraisal was conducted by Integra Real Estate Services a well respected real estate appraisal company. According to the Integra appraisal the Debtors have an equity cushion of approximately $1,000,000 to protect their interests in the property. Minnwest is also protected by the personal guarantee of Hyder Jaweed securing the loan on Trail Ridge.

The Debtor also obtained another opinion from Steven Mueller of the Mueller Group regarding the value of Trail Ridge. Mr. Mueller specializes in apartment building sales and marketing, and he would list the Trail Ridge project at $3,200,000 or approximately $53,333 per unit.[4]

The Debtor currently carries insurance on the property protecting Minnwest from any damage sustained to the property as a result of fire or arson.[5] The Debtor cannot control arson on the property, what they can control is having insurance to protect Minnwest from "catastrophic" loss.

---

[4]    A copy of the Complete Appraisal in a Self-Contained Report prepared by Integra Realty Resources at the direction of Ms. Janet Simpson Senior Vice President Minnwest Bank completed June 17, 2005 is attached as Exhibit C. A copy of the opinion letter by Steven Mueller is attached as exhibit D.

[5]    Copy of current insurance policy attached as Exhibit E.

The natural gas and electric utility cannot shut off natural gas service until at least August 23, 2007 and the Debtor has a motion currently pending with this court to provide a deposit to the utility companies to keep the services intact for the duration of the bankruptcy case.

The Debtor's Chief Manager is using personal funds to continue to pay all obligations currently due on Trail Ridge. The Chief Manager is using personal funds to retain a management firm, make all necessary repairs to Trail Ridge, make deposits, and improve the property. The Chief Manager is making these personal contributions because he is motivated and confident that the Trail Ridge project can be turned around. The turnaround will not happen overnight and the Debtor needs time to rehabilitate the property. Once the property is turned around Minnwest will benefit by receiving the full payments due under the contract with Debtor. The Debtor will cure any problems with the collection and accounting of rents by hiring a real estate management firm to handle all accounting functions for the Debtor.

A recent opinion was conducted at the request Minnwest listing the value of Trail Ridge at $2,400,000. The opinion was paid for by Minnwest.

The Debtor is proposing to cure the default on the loan obligations to Minnwest and the real estate taxes on the premises through payments in the Chapter 11 plan. The Debtor needs a chance to reorganize free of the interference from Minnwest.

The Debtor has solved the issues with the City of Rochester in regards to the property in question by agreeing to remedy all violations of city code and the retention of a professional management firm for the property. The City of Rochester is currently not seeking any remedies

for the violation of city ordinance using rent abatement, and the City of Rochester does not have any liens on the property for services provided by the municipality.

The Debtor is in the best position to remedy any problems associated with the actions taken by the City of Rochester. If the Motion for Relief from the Automatic Stay is granted by this Court, the bank would not have any motivation to repair the property or remedy any violations on the property, their only motivation would be to use the rents to pay the balance on the loan. The Debtor is in the best position to protect the property from damage given the large personal guarantee of Hyder Jaweed Chief Manager of Rochester Service Corp., LLC.

## ARGUMENT

Relief from Automatic Stay Lack of Adequate Protection

A lender seeking relief from stay under Sec. 362(d)(2) has the "...burden of proof on the issue of the debtor's equity in property...". Sec. 11 U.S.C. 362(g). In the case at bar, Minnwest (the lender) has not met their burden regarding lack of equity in Trail Ridge. The various appraisals and opinions regarding the value of the property are conflicting. The appraisal conducted by Integra Real Estate Services in June of 2005 lists the value of Trail Ridge at $3,900,000. The most recent opinion paid for by Minnwest lists the value of Trail Ridge at $2,400,000. With such a large discrepancy regarding the value of the property, Minnwest cannot meet their burden of proof to lift the automatic stay pursuant to 11 U.S.C. 362(g).

The Debtor has insurance on Trail Ridge protecting Minnwest from a catastrophic loss further ensuring Minnwest's adequate protection. Debtor is also willing to make payments to Minnwest to provide adequate protection from depreciation of Trail Ridge.

The Trail Ridge property is vital to the Debtor's reorganization and the Debtor will have sufficient cash flow in the next 3 months to create a feasible and confirmable plan of reorganization. The occupancy rate will improve with the improvements made by the Debtor and the proposed improvements by the property management company. This along with no more lawsuits from Minnwest regarding placing the property in a receivership.

Relief from the Automatic Stay Bad Faith

Minnwest argues that the Debtor filed the present bankruptcy case in bad faith. Judge Dreher noted in In re Marion Street Partnership, 108 B.R. 218, 222 (Bankr. D. Minn. 1989) that:

> "Bad faith" has come to mean different things to different persons, usually dependant on whether that person is a secured creditor or a debtor.

Id. 222

In the present case, those words seem especially true given the fact that the Debtor is attempting to save Trail Ridge, by using the last available vehicle to protect the property from Minnwest. The Debtor and Minnwest have had problems for the last eight months and all of those problems culminated in the Debtor filing for Chapter 11 protection on July 23, 2007. The Debtor was using the last protection available to them after eight months of negotiations with Minnwest. Minnwest has also demonstrated bad faith in their negotiations with the Debtor pre-petition.[6]

The Court in Marion also noted that "it is common, however, for a secured creditor to cry "bad faith" where the case involves a debtor with a single asset, no meaningful unsecured debts, and there has been an ongoing controversy between the parties..." Id. at 222. See also, Stage I

---

[6] See Exhibit A.

Land Co. v. United States, 71 B.R. 225, 229-30 (Bankr D. Minn. 1986). This Court also understood in Marion that the "mere fact that this is a single asset case does not demonstrate that the filing was made in bad faith." Id. at 233, Citing In re Metro, Ltd., 108 Bankr. 684, 686 (Bankr. D. Minn. 1988).

Pursuant to Marion and factors listed as necessary to lift the automatic stay, the Debtor is entitled to a continuation of the automatic stay. In Marion the court held that "...bad faith is not to be assumed where the debtor files for bankruptcy on the eve of foreclosure" Id., Citing In re Mill Place Ltd. Partnership, 94 B.R. at 142 (Bankr. D. Minn. 1988). The Court further held that:

> [s]uch timing is common where attempts to work solutions outside the context of the bankruptcy court have failed . Nor is inability to pay debt service controlling. Virtually every Chapter 11 debtor, in a single asset case and otherwise is having difficulty paying debt service at the time it files.

Id. citing In re Metro, Ltd., 684, 688 (Bankr. D. Minn. 1988).

In the present case the Debtor had attempted to negotiate with Minnwest for eight months prior to the filing of the bankruptcy petition. The Debtor was experiencing cash flow issues as a result of Minnwest's actions in sending out the Sheriff to serve notices on the Debtor's tenants causing the vacancy rate to rise, resulting in less money to pay the secured claim of Minnwest. The Debtor has proposed to employ a professional management firm in the present case to handle the day to day operation of Trail Ridge. The management company has proposed a list of approximately sixty things they are planning on fixing in the next thirty days. The Debtor's Chief Manager Hyder Jaweed has personally invested approximately $40,000.00 into the property in the last several months to remedy all housing code violations. The Chief Manager of the Debtor Hyder Jaweed is also willing to spend further sums of money, as are necessary, to

make the Trail Ridge project a success. He has personally guaranteed the obligation to Minnwest making him highly motivated to make the reorganization a success.

Minnwest argues that the Debtor does not have the ability to infuse capital into Trail Ridge. That is a false statement given the fact that the $40,000 has recently been infused into Trail Ridge to make the project a success. The Debtor has shown a willingness to infuse personal capital into the project to turn it around.

Minnwest argues in its memorandum that the Chapter 11 petition was commenced hours before the proceeding in Olmstead County (Court File No. 55-CV-07-6254). This is true the petition was commenced shortly before the Olmstead County proceeding, but only after eight months of unsuccessful negotiations between the Debtor and Minnwest.

Minnwest argues in its memorandum that Debtor has insufficient cash flow to maintain or improve the Trail Ridge project. That is untrue given the recent capital expenditures to remedy deficiencies with Trial Ridge. The Debtor has proposed a list of sixty improvements that will be made on the project as well as improvements already made.

Minnwest argues that the Debtor does not have sufficient cash flow to pay installment payments for adequate protection. The Debtor is ready and willing to make payments to Minnwest to adequately protect their interest in Trail Ridge. The Debtor has prepared a budget for the property showing the income potential of Trail Ridge.[7]

Minnwest argues that the Debtor's prepetition conduct shows "neglect or denial, or more probably, inept desperation". The Debtor was negotiating with Minnwest for eight months pre-petition, and the Trail Ridge project was a success, until Minnwest decided to institute state court

---

[7] A copy of the budget for Trail Ridge is attached as Exhibit F.

proceedings causing an exodus of renters from Trail Ridge. It seems that Minnwest in its zeal to institute a receivership, actually made Trail Ridge less profitable hurting the projects chance for success. Now with the Debtor filing a Chapter 11 bankruptcy petition, Trail Ridge has a chance for success if given the opportunity.

Finally, Minnwest argues that the Debtor is unable to infuse capital to facilitate a reorganization. The Debtor through its Chief Manager has infused and will infuse capital as needed to keep Trail Ridge a viable operation.

## CONCLUSION

Under 11 U.S.C. Sec. 362(d), the Debtor is entitled to a continuation of the automatic stay. The burden of proof is on Minnwest to prove that the Debtor lacks equity in Trail Ridge. 11 U.S.C. Sec. 362 (g). Minnwest has not met that burden of proof.

If testimony is necessary as to any facts relevant to this motion, Debtor's Chief Manager Hyder Jaweed, Richard Schroeder or another office of the Bank, Richard Dubay and, appraiser, and/or an experienced real estate investor or property manager, may be called to testify. The Debtor may call additional witnesses including experts regarding valuation and rebuttal witnesses.

Wherefore, the Debtor requests that the Court order the automatic stay to remain in place, and for other relief as may be just and equitable.

Dated: 8-15-07

Chad J. Bolinske (319430)
Bolinske & Bolinske, PLLC
1660 South Highway 100, Suite 508E
St. Louis Park, MN 55416

9

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

..................................................................

In Re:

        **ROCHESTER SERVICE CORP., LLC**

             **Debtor.**

**CHAPTER 11**

**CASE NO. 07-32664**

..................................................................

## UNSWORN DECLARATION OF SERVICE

      Chad J. Bolinske, under penalty of perjury, states that on August _15_, 2007 he caused the following to be served.

    1.      Debtors Response to Minnwest Bank Central's Motion for Relief From Stay

    4.      Certificate of Service; and

    5.      Proposed Order.

      By sending true and correct copies to the parties named via first class mail on the attached service list, unless otherwise indicated.

Dated: _6-15-07_

                                   Chad J. Bolinske (319430)
                                   Bolinske & Bolinske, PLLC
                                   1660 South Highway 100, Suite 508E
                                   St. Louis Park, MN 55416
                                   952-294-0144

**SERVICE LIST VIA ECF, US MAIL**

US TRUSTEE'S OFFICE
1015 US COURTHOUSE
300 S FOURTH ST
MINNEAPOLIS, MN 55415
USTPREGION12.MN.ECF@USDOJ.GOV

STEIN AND MOORE
332 MINNESOTA ST, SUITE W-1650
ST. PAUL, MN 55101

SERVICE LIST VIA US MAIL

MINNWEST BANK CENTRAL
14820 HWY 7
MINNETONKA, MN 55345

.............................................................

| | |
|---|---|
| **In Re:** | **CASE NO. 07-32664** |
| **ROCHESTER SERVICE CORP., LLC,** | **AFFIDAVIT OF HYDER JAWEED** |

**Debtor.**

.............................................................

STATE OF MINNESOTA )
                       )    ss
COUNTY OF HENNEPIN )

Your affiant being first duly sworn on oath states as follows:

1. I am the chief manager and sole member of the Debtor. I have personal knowledge of the facts herein and if called upon to testify thereto could do so competently.

2. I focus on the development and management of apartment complexes throughout Minnesota.

3. The Trail Ridge apartment complex is a 60 unit residential property located in Rochester, MN. Trail Ridge is currently 70% full with the average rent being $600.00 per unit.

4. Trail Ridge is currently undergoing major improvements and the Chief Manager has spent around $40,000 recently to ensure that Trail Ridge becomes a profitable rental community. The recent improvements include: (1) boiler installation $7,800.00; (2) sprinkler system $3,500.00; (3) gutters $1,200.00; (4) painting hallway $2,200.00; (5) fire extinguishers $750.00; (6) retention of Paramark Corporation to manage the property at a personal cost of $27,000. The other planned improvements are listed and attached as exhibit B.

EXHIBIT __*A*__

5. I believe the value of Trail Ridge to be between $3,4000,000 and $3,900,000 based on standard measures for valuing rental property in Rochester, MN. Minnwest is owed approximately $2,800,000.

6. I have signed personally on the debt associated with Trail Ridge.

7. Trail Ridge is currently insured for at least the value of Minnwest's interest in the property.

8. Minnwest commenced its lawsuit, in Olmstead County ("CV-07-6254") on June 22, 2007. Once Minnwest commenced the lawsuit, they served the tenants of Trail Ridge. The serving of papers through the Olmstead County Sheriff caused Trail Ridge to lose tenants, decreasing the cash flow available to the property.

9. I did not seek bankruptcy protection as my first option for the Debtor, but after eight months of failed negotiations with Minnwest the business had no other choices left but to file for bankruptcy protection on July 23, 2007. Minnwest refused all the offers made by the Debtor in regards to the Trail Ridge property. I believe the bank was negotiating in bad faith in order to stall to buy more time to appoint a receiver for the Trail Ridge property. The efforts at negotiating with the bank proved futile, and the time spent in a good faith effort to negotiate could have been spent preparing a bankruptcy petition that could have been filed before the Olmstead County hearing (CV-07-6254).

10. I have already invested over $40,000 of equity into the Trail Ridge project and intend to inject capital as needed to turn the project around. The Trail Ridge occupancy rate is on the rise with five new tenants this month and next, and this should only continue to improve as the property is set for major improvements. I have the capital necessary to reorganize the Debtor and

intend to use that capital in order to protect my personal guarantee with Minnwest.

      11. The problems with the City of Rochester are coming to an end after we have pledged to make improvements to Trail Ridge, and with the hiring of a professional management firm for Trail Ridge.

      Further your affiant sayeth not

_____
Hyder Jaweed, Chief Manager

Subscribed and sworn to before
me this ___15___ Day of _____, 2007

_____
Notary Public



JENNIFER MILLERBERND
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2010

EXHIBIT 

Draft Turnaround Plan for Trailridge Apartments

| Item | Who | Target Start Date | Target Complete Date |
|---|---|---|---|
| **Exterior** | | | |
| Remove all visible trash, rugs, furniture, etc. | Yard Guys | 8-1-07 | 8-3-07 (ongoing) |
| Mow grass | Yard Guys | 8-1-07 | 8-1-07 |
| Remove all weeds around entire property | Yard Guys | 8-1-07 | 8-6-07 |
| Spray for weeds in grass | Lawn Co. | 8-8-07 | 8-8-07 |
| Clean up area around dumpsters | Yard Guys | 8-1-07 | 8-1-07 |
| Prune shrubs and trees | Yard Guys | 8-9-07 | 8-13-07 |
| Re-paint yellow curbs | Yard Guys | 8-10-07 | 8-11-07 |
| Repaint dumpster surround in front of office | Maint. | 8-20-07 | 8-20-07 |
| Repaint storage shed. | Maint. | ? | |
| Repaint garages (look at siding replacement) where graffiti was present as needed. | Maint. | ? | |
| Plant a few plants/flowers in obvious places with color to brighten look of property | Maint. | 8-7-07 | 8-7-07 |
| Purchase banner "Under New Management" | Mike/Mgr. | 8-7-07 | 8-15-07 |
| Change property name. Get new phone service with new number. | Mike/Mgr. | 8-8-07 | 8-15-07 |
| New monument sign and entry sign with new name | Mike/Mgr. | 8-10-07 | 9-1-07 |
| Buy flags for flag pole at 21st Ave. | Mgr. | 8-8-07 | 8-9-07 |
| Get pricing for fencing at 21st Ave. and around pool. (wrought iron) If too expensive, repair broken fence on Village Ave. | Mike | 9-1-07 | ? |
| Replace visible damaged blinds and screens within most | Maint. | 8-12-07 | 8-21-07 |

8/8/2007

| | | | |
|---|---|---|---|
| obvious areas seen from parking areas and main streets. | | | |
| Replace any missing lighting with fluorescents (rebates) | Maint. | 8-12-07 | 8-12-07 |
| | | | |
| **Interior - Apartments** | | | |
| Sort out key situation | Mgr. | 8-3-07 | 8-7-07 |
| Tour all units and generate a punch list of work to be completed and notices to be given out for damages. | Mike/Mgr. | 8-13-07 | 8-14-07 |
| Generate capital needs. | Mike/Mgr. | 8-21-07 | 8-21-07 |
| Prep all vacants and turn easiest ones first. | Maint./ Mgr. | Ongoing | |
| | | | |
| **Interior – Common** | | | |
| Deal with correction notices from bldg. safety | Mike | 8-3-07 | 8-7-07 |
| Deal with correction notice city atty. | Mike | 8-3-07 | 8-7-07 |
| Sort out key situation. | Mgr. | 8-3-07 | 8-7-07 |
| Tour all floors and generate a punch list of work to be completed | Mike/Mgr. | 8-13-07 | 8-14-07 |
| Generate capital needs. | Mike/Mgr. | 8-21-07 | 8-21-07 |
| Clean entries and hallways (daily / as needed) | Mgr./Maint. | 8-1-07 | Ongoing |
| Replace any missing lights inside. Use fluorescents in common areas. | Maint. | 8-7-07 | Ongoing |
| Finish painting hallways | Maint./Painter | 8-13-07 | 9-1-07 |
| Buy Carpet Cleaner | Mike | 8-14-07 | 8-15-07 |
| Shampoo salvageable carpets in hallways | Maint. | 8-7-07 | 8-8-07 |
| Secure quotes for carpet replacements | Mike | 8-1-07 | 8-9-07 |
| Replace vinyl base materials | Carpet Co. | 9-1-07 | 8-21-07 |
| Spruce up office | Mgr. | 8-7-07 | 8-9-07 |
| Check and update interior signage as needed. Remove all posted numbers and business references that are not current. | Mgr. | 8-7-07 | 8-8-07 |
| | | | |
| **Community Communication** | | | |
| Contact Capt. Pittenger and Daryl Hildebrant - Police | Mike | 7-29-07 | 7-29-07 |
| Meet with Capt. Pittenger, Hildebrandt and beat officers to generate a plan and partner with | Mike | 8-9-07 | 8-21-07 |

| officers | | | |
|---|---|---|---|
| Meet with Gary Dutton (Building Safety) | Mike | 8-3-07 | 8-7-07 |
| Call Pat Alfredson – Asst. Cty Atty. Discuss Correction Notice Issues in court system | Mike | 8-3-07 | 8-7-07 |
| Call Mayor to inform him we are managing | Mike | 8-7-07 | 8-9-07 |
| Call Post Bulletin (Jeff Kiger) to generate positive PR for the property | Bob/Dave/Mike | 8-2-07 | 8-2-07 |
| Call Vance Swisher and Dennis Olson - Fire Dept. to cooperate on fire issues | Mike | 8-3-07 | 8-3-07 |
| Discuss Fire watch issues with Jeff Whitney | Mike | 8-3-07 | 8-3-07 |
| | | | |
| **Staffing** | | | |
| Interview all staff to determine which employees will work out and which will not. | Mike | 8-1-07 | 8-1-07 |
| Advertise for new manager and maintenance as needed. | Mike | 8-7-07 | ASAP |
| Perform criminal background checks if not done for all who we would like to keep. | Mike | 8-7-07 | ASAP |
| Employment paperwork for new employees | Mike | 8-7-07 | ASAP |
| Employee handbook training | Mike | 8-8-07 | ASAP |
| Forms and process training | Mike | 8-8-07 | ASAP |
| A/P training | Kari | 8-9-07 | ASAP |
| A/R training | Patti | 8-9-07 | ASAP |
| Yardi training | Sarah D. | 8-9-07 | ASAP |
| | | | |
| **Tenants** | | | |
| Letter to tenants – New Mgmt. | Mike | 8-7-07 | 8-8-07 |
| Review rent roll | Mike | 8-1-07 | 8-2-07 |
| Review tenant balances | Mike | 8-2-07 | 8-2-07 |
| Send out late letters as needed. | Mgr. | 8-6-07 | 8-6-07 |
| Review leases. Generate new leases as needed. Raise rents if appropriate. | Mike/Mgr. | 8-7-07 | 9-1-07 |
| Send out rules to all tenants – obtain signature of receipt. | Mike/Mgr. | 8-10-07 | 8-15-07 |
| Tenant meeting introducing Paramark. | Mike | 8-15-07 | 9-21-07 |
| Enforce rules. Zero tolerance for problem tenants. | Mgr. | Ongoing | Ongoing |
| Remove trouble tenants | Mgr. | Ongoing | Ongoing |

| Market property to new tenants | Mike/Mgr. | Ongoing | Ongoing |
|---|---|---|---|
| Screen aggressively to find most qualified tenants | Mgr. | Ongoing | Ongoing |
| | | | |
| **Vendors** | | | |
| Identify needed vendors | Mgr./Mike | 8-9-07 | 8-11-07 |
| Connect with needed vendors and discuss turnaround plan and payment plans to ensure quality service | Mike | 8-15-07 | Ongoing |
| Change mailing address from Trailridge to Paramark | Mike/Acctg. | 8-7-07 | Ongoing |
| Pay vendors on timely basis | Acctg. | Ongoing | Ongoing |

Get a sneak peek of the all-new AOL.com.



## The Mueller Group at RE/MAX Results
11200 West 78th Street, Eden Prairie MN. 55344, 612-386-7110

August 14, 2007

Ref: 851,863,875, SE 21st Avenue
     Rochester, MN. 55904

Dear Asgher,

After evaluating this property with the current market conditions I feel the best list price
for the property would be $3,200,000/building which is approximately $53,333/unit.

I you have any questions please feel free to contact me at 612-386-7110

Sincerely

Steven G .Mueller
Apartment Building Sales and Marketing

EXHIBIT ___D___

Steve Mueller
RE/MAX Results
11200 W 78th St., Eden Prairie, Minnesota 55344
Direct: (952) 829-3801, Mobile: (612) 386-7110
E-Mail: steve@themuellergroup.net, Web Site: www.themuellergroup.net

☎ Each Office Independently Owned and Operated

22XB927103   02 000 RMM007

# AMERICAN FAMILY MUTUAL INSURANCE COMPANY

MADISON, WISCONSIN 53783-0001

## BUSINESSOWNERS POLICY
## DECLARATIONS

**POLICY NUMBER**
22XB927103

**CUSTOMER BILLING ACCOUNT**
012-279-237 18

**NAMED INSURED**   ROCHESTER SERVICE CORP
DBA TRAIL RIDGE APARTMENTS

**MAILING ADDRESS**   3 BLUE SPRUCE CT
NORTH OAKS, MN 55127-2039

**POLICY PERIOD**    FROM   11-23-2006    TO   11-23-2007
12:01 A.M. Standard Time at your mailing address shown above.

**FORM OF BUSINESS**   CORPORATION

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

## SECTION I PROPERTY

ALL PROPERTY COVERAGES ARE SUBJECT TO THE FOLLOWING:

**COVERED CAUSES OF LOSS**   SPECIAL - RISK OF DIRECT PHYSICAL LOSS

**COVERAGE PROVIDED.** BLANKET INSURANCE AT THE FOLLOWING DESCRIBED PREMISES ONLY FOR COVERAGES FOR WHICH A LIMIT OF INSURANCE IS SHOWN UNLESS COVERAGE IS PROVIDED BY AN ENDORSEMENT.

**DESCRIPTION OF PREMISES**

PREMISES NO.   0001   BUILDING NO.   001

LOCATION      851 21ST AVE SE
ROCHESTER, MN 55904-5133

BUILDING INTEREST      LEASED TO OTHERS
PREDOMINANT OCCUPANCY   APARTMENT BUILDING WITHOUT MERCANTILE
NUMBER OF UNITS   30
CONSTRUCTION      FRAME
YEAR BUILT      1970
COMMERCIAL BUILDING CONSTRUCTION COST INDEX LEVEL   296

**DESCRIPTION OF PREMISES**

PREMISES NO.   0002   BUILDING NO.   001

LOCATION      863 21ST AVE SE
ROCHESTER, MN 55904-3116

EXHIBIT _E_

BUILDING INTEREST      LEASED TO OTHERS
PREDOMINANT OCCUPANCY   APARTMENT BUILDING WITHOUT MERCANTILE
NUMBER OF UNITS   30
CONSTRUCTION      FRAME
YEAR BUILT      1970
COMMERCIAL BUILDING CONSTRUCTION COST INDEX LEVEL   296

**AGENT**   081-074
KIM DESOUKY AGENCY, INC.
2970 RICE ST
SAINT PAUL, MN 55113-2230

**PHONE**
651-482-1598

**PAGE**      0001
**BRANCH**   RMM007   RENW
ENTRY DATE  09-05-2006

BP AF 01 04 06                    AGENT                    Stock No. 16141

## Trail Ridge Apartments
### Budget
### Operating Statement (12 Months Summary)

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | | | | | |
| 4000 Rent/lease Income | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $22,809.00 | $31,900.00 | $34,500.00 | $37,800.00 | $127,009.00 |
| 4010 Storage Income | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4020 Garage Income | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $300.00 | $400.00 | $600.00 | $600.00 | $1,900.00 |
| 4030 Pets Rental Income | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4050 Community Room Income | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4100 Application Fee Income | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4110 Lock Out Fee Income | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4300 Late Charge Income | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $125.00 | $150.00 | $150.00 | $150.00 | $575.00 |
| 4310 NSF Income | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4350 Laundry Income | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $600.00 | $700.00 | $800.00 | $800.00 | $2,900.00 |
| 4390 Other Income | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4400 Concessions | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **Total Revenue** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $23,834.00 | $33,150.00 | $36,050.00 | $39,350.00 | $132,384.00 |
| | | | | | | | | | | | | | |
| **Operating Expenses** | | | | | | | | | | | | | |
| 5000 Real Estate Taxes | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $3,137.83 | $3,137.83 | $3,137.83 | $3,137.83 | $12,551.32 |
| 5010 Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,387.08 | $1,387.08 | $1,387.08 | $1,387.08 | $5,548.32 |
| 5100 Natural Gas | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $990.00 | $1,290.00 | $2,800.00 | $4,161.00 | $9,241.00 |
| 5110 Water/Sewer | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $285.00 | $184.10 | $265.00 | $185.00 | $919.10 |
| 5120 Electricity-Common Areas | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $310.00 | $352.00 | $280.00 | $250.00 | $1,192.00 |
| 5150 Refuse Removal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5170 Telephones | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $65.00 | $65.00 | $65.00 | $65.00 | $260.00 |
| 5200 Advertisement | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $250.00 | $250.00 | $250.00 | $150.00 | $900.00 |
| 5250 Rental License | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5300 Security Contract | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5340 Exterminating Contract | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $200.00 | $200.00 | $200.00 | $200.00 | $800.00 |
| 5350 Lawn Care & Snow Removal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $200.00 | $250.00 | $450.00 |
| 5400 Repair & Maintenance Payroll | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5410 Administrative Payroll | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,666.66 | $1,666.66 | $1,666.66 | $1,666.66 | $6,666.64 |
| 5500 Repairs/Maintenance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,500.00 | $2,500.00 | $2,500.00 | $1,500.00 | $9,000.00 |
| 5550 Repair Supplies | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5560 Cleaning Supplies | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $75.00 | $0.00 | $0.00 | $75.00 |
| 5600 Caretaker | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $550.00 | $550.00 | $550.00 | $550.00 | $2,200.00 |
| 5700 Office Supplies | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $25.00 | $0.00 | $0.00 | $25.00 |
| 5730 Credit Reports/Background Ch | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $75.00 | $75.00 | $75.00 | $75.00 | $300.00 |
| 5900 Management Fee | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $8,000.00 |
| **Total Operating Expenses** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $13,416.57 | $13,757.67 | $15,376.57 | $15,577.57 | $58,128.38 |
| | | | | | | | | | | | | | |
| **Net Income (Loss)** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $10,417.43 | $19,392.33 | $20,673.43 | $23,772.43 | $74,255.62 |

EXHIBIT E

