## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:  Rochester Service Corp, LLC,                    BKY 07-32664 NCD 11

        Debtor.

---

### STIPULATION REGARDING ADEQUATE PROTECTION
### AND USE OF CASH COLLATERAL

---

This Stipulation is entered into effective the <u>17th</u> day of August, 2007, between Rochester Service Corp, LLC ("Debtor") and Minnwest Bank Central (the "Bank").

### RECITALS

A.      On July 23, 2007 ("Filing Date"), Debtor filed a petition for reorganization under chapter 11 of U.S.C. Title 11 (the "Bankruptcy Code").  Pursuant to 11 U.S.C. §§ 1107 & 1108, Debtor is authorized as debtor-in-possession to continue the operation and management of its business.

B.      As of the Filing Date, the Debtor was indebted to the Bank (the "Existing Indebtedness") under that certain promissory note dated August 2, 2005 (the "Note"), in the original amount of $2,900,000.  The balance due on the Filing Date was approximately $2,891,000.

C.      The Existing Indebtedness was and continues to be secured under a Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement dated August 2, 2005 (the "Mortgage") on certain real property identified as Lot 3, Block 1, Campustown Subdivision, Olmstead County, Minnesota (the "Premises").  The Existing Indebtedness was and continues to be secured by all of the cash, cash

equivalents, accounts, equipment, leases, supplies, and general intangibles of the Debtor, as evidenced by the Mortgage. The Mortgage was recorded in the office of the County Recorder for Olmstead County on August 10, 2005 as Doc. No. A-1071943. The security interest was further perfected by a UCC financing statement filed with the Minnesota Secretary of State on August 19, 2005, as Doc. No. 20518415511. The personal property collateral is collectively referred to as the "Collateral".

D.      The Bank's lien in the Collateral is a duly perfected first-to-file lien.

E.      Debtor represents and warrants that as of the date of this Stipulation, the value of the Premises securing the Bank's debt is no less than $3,000,000. The Debtor believes the value of the Premises to exceed the amount of the Bank's secured claim.

F.      The parties believe that, as a fully-secured creditor, the Bank is entitled to interest on its claim at the rate set forth in Note, fees as therein provided, and reimbursement for its reasonable costs of collection and attorney's fees. Subsequent to the filing date, interest and fees under the Existing Indebtedness will continue to accrue pursuant to the terms of the Note, but only to the extent permitted under 11 U.S.C. § 506.

G.      Cash Collateral, as that term is defined in 11 U.S.C. § 363, consists of all funds and cash equivalents of the Debtor, together with the proceeds of all of the Collateral in which the Bank has an interest.

H.      The Bank has demanded adequate protection to protect its interest in all of the Collateral securing its claim, including but not limited to its continuing claim for interest on the Existing Indebtedness.

I.     Debtor has requested of the Bank permission to use Cash Collateral to the extent as herein provided, and the Bank has indicated its willingness to grant such permission, but only upon the terms and conditions set forth in this Stipulation.

AGREEMENT

NOW, THEREFORE, in consideration of the terms, conditions and covenants in this Stipulation, the parties agree as follows:

1.     Recitals.  The Recitals set forth in this Stipulation are adopted by the parties as true and correct statements of fact.

2.     Acknowledgment of secured claim.  Debtor acknowledges that the above-described Existing Indebtedness is absolutely and unconditionally due and payable without offset, defense or counterclaim.  Debtor acknowledges that it has no claims or causes of action against the Bank of any type or character.  Debtor acknowledges that the Existing Indebtedness is secured by a properly-perfected lien in the Premises and the Collateral to the full extent set forth in the Recitals.  Debtor acknowledges that the Bank's lien shall continue to have the same priority, dignity, and effect post-petition as it had immediately prior to the Filing Date.  Neither the Existing Indebtedness nor the lien securing same is subject to avoidance or disallowance under the Bankruptcy Code. (However, the foregoing acknowledgments shall not be binding on any Trustee subsequently appointed in this case.)

3.     Undertakings by Debtor relative to perfection, etc.  (a) Debtor shall execute such documents as the Bank reasonably requests in order to memorialize and perfect the Bank's interest in the collateral described or granted in this Stipulation; provided, however,

that any such interest granted to the Bank under this agreement shall be valid and effective without the necessity of filing or recording any further documentation and no action shall be required to be taken by the Bank to evidence or perfect said liens and security interests, although the Bank at its option may elect to do so. (b) Debtor shall not engage in any proceedings to impose upon the Bank or upon the Collateral the surcharge provisions of 11 U.S.C. § 506(c) or the enhancement of collateral provisions of 11 U.S.C. § 552(b).

4. <u>Continuity of provisions of existing loan documentation pertaining to collateral</u>. Except to the extent modified by this Stipulation, all of the terms, conditions and undertakings of the Note, Mortgage, and related loan documents pertaining to the Premises and the Collateral remain in full force and effect and are adopted in this Stipulation as if fully set forth herein, insofar as they pertain in any manner to grants, duties, or undertakings in any manner relating to the Premises or the Collateral.

5. <u>Adequate protection</u>. As and for adequate protection, and pursuant to the provisions of 11 U.S.C. § 363:

    A. Debtor hereby grants the Bank a replacement lien on the Premises and all property of the same types as the Collateral, now existing or at any time becoming property of the estate of the Debtor, including all post-petition cash, cash equivalents, accounts, equipment, leases, supplies, and general intangibles coming into existence after the Filing Date, and on their proceeds, and any replacement equipment acquired by Debtor and its proceeds, which lien shall have the same priority, dignity, and effect as the Bank's pre-petition lien (other than with respect to goods acquired by purchase money security agreement). The

replacement lien shall secure any diminution in the value of the Premises and the Collateral, including from use of the Collateral or Cash Collateral in which the Bank has an interest, occurring after the Filing Date. The replacement lien shall be in addition to the Bank's pre-petition lien in the Premises and the Collateral. The Bank shall <u>not</u> have a lien on Debtor's avoidance actions or any proceeds thereof.

B. Beginning September 10, 2007 and continuing on the 10th of each month thereafter, Debtor shall pay the Bank $15,232.00 per month.

C. On or before August 22, 2007, Debtor shall provide to the Bank written evidence of insurance covering the Premises. Said proof of insurance must be acceptable to the Bank, in form an substance, in the Bank's reasonable discretion.

D. Debtor has employed Paramark Real Estate Service to collect and account for all rents and to manage all expenses reasonably necessary to preserve the Premises. The Debtor shall, and <u>hereby does</u>, authorize and instruct the firm to cooperate with the Bank's reasonable requests for information.

E. Debtor has employed Cavanaugh and Company, P.A., as an independent CPA to perform professional accounting services for the Debtor. The Debtor shall, and <u>hereby does</u>, authorize and instruct the firm to cooperate with the Bank's reasonable requests for information.

6. <u>Consent to use of Cash Collateral</u>. The Bank consents to Debtor's use of the cash collateral in the ordinary course of Debtor's business, but only to the extent herein

provided. The Bank may withdraw such consent at any time upon seven (7) days' written notice, without regard to the occurrence or non-occurrence of a default. For example, if an updated, independent appraisal shows the value of the Premises to be less than or equal to the amount of the Bank's claim, the parties anticipate that the Bank would withdraw its consent.

7.  <u>Application of payments</u>. The amounts paid to the Bank under ¶ 5 shall be applied by the Bank first, to the extent allowable under 11 U.S.C. § 506(b), to the payment of interest and fees at the existing rates to the Note held by the Bank, and any balance shall be applied to the reduction of principal.

8.  <u>DIP Accounts</u>. At all times during the term of this Stipulation, Debtor shall maintain all of its DIP bank accounts at U.S. Bank (the "Depository"). Debtor shall utilize all of its accounts at the Depository in a businesslike manner. The presentation of any NSF checks shall constitute an immediate default under this Agreement, even if the Depository does cover any such checks. The Debtor and <u>hereby does</u>, authorize and instruct the Depository to cooperate with the Bank's reasonable requests for information.

9.  <u>Covenants</u>. During the term of this Stipulation, Debtor agrees that it will:

    A.  Timely file all reports required by the U.S. Trustee;

    B.  Timely file all tax returns with the State and Federal government;

    C.  Deposit all incoming receipts into an authorized DIP account at the Depository;

    D.  Maintain its only DIP account(s) at the Depository;

    E.  Keep all collateral insured for its full replacement value, with the Bank named as lender loss payee/mortgagee.

    F.  Keep complete and accurate books and accounts, and provide to the Bank reasonable access to its books, records and accounts.

G.  Comply with the following reporting requirements:

(i)  Provide the Bank copies of all reports, including cash flow reports, as they are provided to the U.S. Trustee's office;

(ii)  Provide access to Bank and its agents to make physical inspection of Debtor's property, in a reasonable manner, and to make photocopies of its books and records.

(iii)  Provide to the Bank, by the 10th of the month following the month is question, updated rent rolls showing complete contact information and payment status for each tenant.

(iv)  Advise the Bank in writing of any material changes in its financial circumstances within seven (7) days of its knowledge as to such change.

(v)  Provide the Bank with such further financial information as is reasonably requested by the Bank.

11.  <u>Term</u>.  Unless a Plan in this case has been sooner confirmed, or the parties otherwise agree, this Stipulation shall expire on November 13, 2007.

12.  <u>Stipulation subject to Court Order</u>.  This Stipulation is subject to, and shall be effective upon, the entry of an Order approving the Stipulation, and the parties hereby agree that such an Order may be entered.

13.  <u>Gap provisions upon any extension of term of Stipulation</u>.  In the event that the Debtor and the Bank enter into an agreement to extend the term of the Stipulation, one or both of them shall apply to the Court, upon notice to all parties in interest, for approval of such extension agreement.  In the event of such agreement and notice, and until or unless an objection is filed by a party in interest, or the Court (regardless of whether an objection is filed) enters an Order on the motion, the Debtor shall be deemed authorized to continue to use cash collateral (but only in accordance with the terms of the extended Stipulation), and the above grant of a replacement lien to the Bank shall continue in full force and effect

to the same extent as herein provided. (However, nothing in this paragraph should be construed as an undertaking to extend this Stipulation.)

14. <u>Notices</u>. All notices required to be sent by the terms of this Stipulation shall be sent to the persons at the addresses listed below, or otherwise designated in writing from time to time. If to Debtor, it should be sent to:

<table>
<tr><td>Rochester Service Corp LLC<br>3 Blue Spruce Ct.<br>St. Paul, MN 55127</td><td>Bolinske & Bolinske, PLLC<br>1660 S. Highway 100, Ste. 508<br>St. Louis Park, MN 55416</td></tr>
</table>

If to Bank, it should be sent to:

<table>
<tr><td>Minnwest Bank Central<br>14820 Highway 7<br>Minnetonka, MN 55345</td><td>Stein & Moore, P.A.<br>332 Minnesota St., Ste. W-1650<br>St. Paul, MN 55101</td></tr>
</table>

15. <u>Default</u>. Any one of the following shall constitute a default:

A. Failure of Debtor to comply with any terms, covenants, conditions and undertakings hereof;

B. Failure of Debtor to pay any payment required herein, to make the reports required herein, or to pay currently amounts due the U.S. Trustee and any taxing authorities;

C. Entry of an Order of the Court altering or vacating the Order approving this Stipulation, or lifting the automatic stay as to any creditor, or providing for conversion or dismissal of the case, unless Bank shall consent to any such Order.

D. Failure of the Debtor to file a plan of reorganization by the expiry of the term of this Stipulation.

E. Termination of the services of either Paramark Real Estate Service or Cavanaugh and Company P.A. for any reason, whether for cause or not, whether by the Debtor or the non-Debtor party, unless the Bank shall consent to any such termination.

In the event of default under ¶ 15.A or 15.B, the Bank shall send notice thereof to Debtor and its counsel by certified mail, and Debtor shall have seven (7) days from the date of

said notice to cure such defaults. In the event Debtor shall fail to do so, the Bank shall be deemed to have withdrawn its limited consent to use Cash Collateral, and the Debtor agrees that the Bank may bring the matter on for hearing before the Court on an expedited basis, and Debtor's only defense to Bank's request for stay relief shall be the non-existence or cure of the alleged default. In the event of a default under of a default under ¶ 15.C, 15.D or 15.E, the Bank shall be deemed to have withdrawn its limited consent to use Cash Collateral, and the Debtor agrees that the Bank may bring the matter on for hearing before the Court on an expedited basis, and Debtor's only defense to Bank's request for stay relief shall be the non-existence of the alleged default.

16. <u>Complete agreement</u>. This Stipulation, together with the loan documents pertaining to the Existing Indebtedness, sets forth the complete agreement of the parties relative to its subject matter, and may not be modified, waived, or changed, except by a writing signed by the parties to be bound thereby.

17. <u>Binding effect</u>. This agreement shall be binding upon Debtor, its successors, and assigns, but not upon any Trustee subsequently appointed in this case.

18. <u>No waivers</u>. Except as specifically herein set forth, neither Debtor nor the Bank waives any rights to which it is entitled under the terms of the existing loan documents. No failure or delay by the Bank in exercising any right, power, or remedy hereunder or any other related loan documents shall be a waiver thereof; nor shall any single or partial exercise of such right, power, or remedy preclude any other or further exercise thereof or the exercise of any other right, power, or remedy.

IN WITNESS WHEREOF, the parties and their respective counsel have executed this agreement the day and the year first above written.

**Rochester Service Corp, LLC**

BY: _____

ITS: _____

**Minnwest Bank Central**

BY: _____

ITS: SVP

**Bolinske & Bolinske, PLLC**

BY: _____
Chad J. Bolinske, #319430
Attorney for Debtor

**Stein & Moore, P.A.**

BY: _____
Eric J. Sherburne, #279389
Attorney for Minnwest Bank Central

*THE FOLLOWING INDIVIDUAL*
*GUARANTOR ACKNOWLEDGES AND*
*CONSENTS TO THE FOREGOING*
*STIPULATION:*

_____
**Hyder Jaweed, individually**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

_____

In re:  Rochester Service Corp, LLC,                    BKY 07-32664 NCD 11

Debtor.

_____

ORDER RE: AUTOMATIC STAY AND USE OF CASH COLLATERAL

_____

This matter was considered by the Court on a motion by the Debtor for use of cash collateral and Minnwest Bank's objection to the same, and on a motion by Minnwest Bank Central for relief from the automatic stay and the Debtor's objection to the same.  Based on the motion, file, records, and proceedings herein, including the Stipulation filed by the Debtor and Minnwest Bank:

IT IS ORDERED:

1.  Minnwest Bank's motion for relief from the automatic stay is denied.

2.  The Stipulation between the Debtor and Minnwest Bank is approved and the Debtor

is authorized to operate in accordance with its terms.

3.  The Debtor is authorized and directed to pay adequate protection payments and

grant replacement liens in accordance with the Stipulation.


_____
Honorable Nancy C. Dreher
United States Bankruptcy Judge