UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

---

In Re:
Rochester Service Corporation, LLC

Debtor.

BKY No. 07-32664
Chapter 11 Case

---

PLAN OF REORGANIZATION

OF

ROCHESTER SERVICE CORPORATION, LLC

# ARTICLE I

## INTRODUCTION

The Debtor, Rochester Service Corporation, LLC, proposed the following Plan of Reorganization ("Plan") pursuant to applicable provisions of the United States Bankruptcy Code, Title 11 of the United States Code.

# ARTICLE II

## DEFINITIONS

For the purposes of this Plan, the following terms shall have the meanings set forth herein.

1.  "Code" shall mean the United States Bankruptcy Code, Title 11 U.S.C. § 101, *et seq.*

2.  "Court" shall mean the United States Bankruptcy Court for the District of Minnesota, Third Division and/or the United States Bankruptcy Judge hearing this case.

3.  "Debtor" shall mean Rochester Service Corp, LLC, the debtor-in-possession in the above-captioned Chapter 11 reorganization proceedings.

4.  "Effective Date" shall mean thirty days after the date on which an Order confirming the Plan is entered by the Court; or if an appeal of the Order confirming the Plan is timely taken, the eleventh day after a final, non-appealable Order confirming the Plan is entered by the Court.

5.  "Filing Date" shall mean July 22, 2007, the date on which the Debtor filed its petition for relief under chapter 11 of the United States Bankruptcy Code commencing the above-captioned bankruptcy case.

6.  "Plan" shall mean this Plan of Reorganization proposed by the Debtor dated October 22, 2007.

7.  All other terms used in the Plan shall have the meanings ascribed to them in the Code, Bankruptcy Rules, commercial practice, and ordinary usage.

# ARTICLE III

## TREATMENT OF ADMINISTRATIVE CLAIMS

Administrative Claims are those costs and expenses arising during the course of the case, and entitled to administrative priority pursuant to Section 503(b) of the Code, and are entitled to first priority under Section 507(a)(1) of the Code. Except to the extent that such Administrative Claims require court approval, the Debtor shall pay Administrative Claims in the ordinary course of business. If not paid previously, allowed Administrative Claims will be paid in full in cash on the Effective Date, or otherwise in accordance with such terms as may have been agreed by the Debtor and the Claimants.

Professional fees that constitute Administrative Claims are the allowed fees and costs of professionals that have been employed by the Debtor pursuant to court orders authorizing such retention. In most cases, the payment of Administrative Claims to professionals is subject to approval of the Court. The Debtor shall pay all allowed fees and costs of professionals in full on the Effective Date, or as soon as possible thereafter, or in the ordinary court of the Debtor's business upon such terms as may be agreed upon by the Debtor and the Claimants.

Fees payable by the Debtor pursuant to Title 28 U.S.C. § 1930 are entitled to administrative priority and shall be paid in full on the Effective Date, or otherwise when due in accordance with court orders or pursuant to policies and procedures as established by the Clerk of Court and the United States Trustee. The Debtor shall continue to pay such fees to the extent payable after the Effective Date, as such fees come due, until the Chapter 11 case is closed, dismissed or converted. After confirmation of the Plan, the Debtor shall submit such operating reports to the United States Trustee for each reporting period (or portion thereof) until the Chapter 11 case is closed, dismissed or converted. The Debtor shall otherwise comply with all reporting requirements imposed by the Office of the United States Trustee.

## ARTICLE IV

## PRIORITY CLAIMS

Pre-Petition Priority Claims held by governmental agencies, entitled to priority under 11 U.S.C. § 507, shall be paid in full over a period of five years, in sixty equal monthly installments, beginning on the first day of the first calendar month following the Effective Date. All pre-petition Priority Claims shall be paid interest on the outstanding balance of the allowed Priority Claim at the rate provided for in Title 26 U.S.C. § 6621(b) from and after the Effective date. The Debtor shall make such additional or other payments as maybe required in order to assure that payment of such Priority Claims shall be made in full within sixty months of the date of the Confirmation Order.

## ARTICLE V

## CLASSIFICATION OF CLAIMS AND INTEREST

**(a)** **Class 1:  Secured Claim of Minnwest Bank.**      Class 1 Claims shall consist of the secured claims of Minnwest Bank secured by the real and personal property owned by the Debtor.  Class 1 Claims are estimated to be in the amount of $2,828,966.80 plus accrued and unpaid interest.

**(b)** **Class 1A: Secured Claim of Minnwest Bank.**  Class 1A Claims shall consist of the arrears owed on the real property owed by the Debtor on the filing date.  Class 1A claims are estimated at $65,000 plus accrued and unpaid interest.

**(c)** **Class 2: Priority Claims.**  Class 2 claims consist of property taxes owed to the City of Rochester and are estimated at $18,827.00 on the date of filing.

**(d)** **Class 3:  General Unsecured Claims.**      Class 3 General Unsecured Claims shall consist of all pre-petition general unsecured claims, including the unsecured, non-priority portion of any tax claims.  The total amount of Class 3 General Unsecured Claims are estimated to be $104,267.83.

**(e)** **Class 4:  Claims of Interest Holders.**      Class 4 shall consist of the interests of the members of the Debtor

## ARTICLE VI

## TREATMENT OF CLASSES

**(a)** **Class 1:  Secured Claim of Anchor Bank.**  Holder of Class 1 Secured Claims shall be paid in full amount of its claims over a period of five years together with interest at the rate of 6.5%, based on a thirty year amortization, with a balloon payment due at the end of five years.  The Holder of Class 1 Secured Claims shall retain its mortgage lien on all property of the Debtor.  Initially, the monthly distribution shall be in the approximately amount of $16,000 covering interest and escrow payments.  The amount of the distribution to increase to $20,000 once the occupancy of the Debtor's property reaches 90%.

**(b)** **Class 1A: Secured Claim of Minnwest Bank.**  The holders of Class 1A Secured Claims shall be paid the full amount of its claims over a period of five years together with interest at the rate of 6.5%.  The amount of the distribution shall be $1200.00 per month until the claim is paid in full.

**(c)** **Class 2: Priority Claims.**  The holders of Class 2 priority claims will be paid the full amount of its claims over a period of five years.  The total amount of distribution is estimated at $18,827.00 over a period of five years.  The amount of the distribution will be $1568.92 per month until the claim is paid in full.

**(d)    Class 3:  General Unsecured Claims.**    The Debtor shall make total distributions of $52,133.91, in quarterly installments of $2172.11 over a period of five years.  The first quarterly distribution shall start on the last day of the first calendar quarter following the Effective Date, and continue on the last day of each succeeding calendar quarter thereafter until the full amount of the distributions have been paid.  Holders of Class 3 General Unsecured Claims shall receive their pro-rata portion of the distributions based on the ratio of the amount that each allowed claim bears to the total amount of the allowed Class 3 Claims.

**(e)    Class 4:  Claims of Interest Holders.**    The interests of members shall be cancelled and new membership interests issued to the interest holders in consideration for advances to be made by the holder of Class 4 Claims of Interests Holders to the Debtor.

## ARTICLE VII

## MEANS OF EXECUTION OF THE PLAN

On the Effective Date the Debtor shall be re-vested with title to all property of the bankruptcy estate herein.  The Debtor shall continue to operate its business in the ordinary course.

The note with Minnwest regarding the secured claim will remain in effect and the Debtor will continue to make payments on the note.  Mortgages and liens held by holders of Class 1 Secured Claims shall retain the same dignity, priority and extent as afforded pre-petition of the mortgages, liens or security interests asserted by the holders of each such claims.

All distributions shall be funded by the Debtor's income from operations.  The Debtor shall use all income to fund its operation and to fund the distributions required under this Plan.

The Debtor shall not pay any distributions of profit nor pay any dividends to any interest holders until the Debtor has fully performed under the terms and conditions of the Plan.

## ARTICLE VIII

## MODIFICATION OF THE PLAN

The Debtor may amend or modify the Plan in the manner provided for under 11 U.S.C. §1126(a) and (b).  The Debtor shall give notice of any proposed modifications to the United States Trustee, any party who has filed a response or objection (other than a ballot) to the plan, any party who has required notice under the Bankruptcy Rules 2002(1) or 9010(b), and any party the treatment of whose claim is affected by the modification.  The Debtor reserves the right to make such modifications at any hearings or confirmation as are necessary to permit this Plan to be confirmed under Section 1129(b) of the Code.

## ARTICLE IX

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Unless previously assumed or rejected, the Debtor shall assume all executory contracts as of the Effective Date.

## ARTICLE X

## CONTESTED CLAIMS

The Debtor reserves the right to object to any filed or scheduled claim. Unless otherwise ordered, the Debtor shall, within thirty days of the Confirmation Date, file objections to any claim. The Court shall retain jurisdiction over such matters until resolved by final-non-appealable order. If any such claim is unresolved as of he date on which the Debtor is otherwise required to commence making payments to the holders of any claim to which an objection has been timely filed, the Debtor shall defer making any distributions to the holders of such claims until such time as the claim objection is settled or resolved by final non-appealable order.

## ARTICLE XI

## POST-CONFIRMATION MANAGEMENT

The Debtor's members shall retain their positions and will not draw a salary until the Debtor has fully performed under the terms and conditions of the plan.

## ARTICLE XII

## AVOIDABLE TRANSFERS AND LITIGATION

The Bankruptcy Code provides for a number of claims and causes of action that debtor-in-possession may assert for the benefit of the bankruptcy estate. Among the rights of recovery that are available to a debtor-in-possession are those based on theories of preferential and fraudulent transfer.

A preference is a payment or other transfer of property of the Debtor to or for the benefit of a creditor, before the bankruptcy case was commenced, on an antecedent debt, which transfer has the following characteristics: (1) was made while the debtor was insolvent; (2) it was made within the time period (s) specified in the Code; and (3) it enables the creditor receiving the transfer to receive more than it otherwise would have received if the case were a chapter 7 case. When a debtor successfully makes a claim against a creditor (preference defendant) on a preference, the preference defendant is required to return the payment or otherwise transfer

made, and the preference defendant then ordinarily has an unsecured claim in the amount of the returned preference.

An avoidable fraudulent conveyance under the Code is a transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of filing of the case and that was either: (a) undertaken with actual intent to hinder, delay, or defraud any entity to which the debtor was or became indebted, or (b) a transaction under which the debtor received less than reasonably equivalent value, and (i) the debtor was insolvent on the date that the transfer was made or became insolvent as a result of the transaction; (ii) the debtor was engaged in business or a transaction, or was about to engage in such business or transaction for which the debtor's remaining assets would be insufficient; or (iii) the debtor intended to incur or believed that it would incur debts beyond the debtor's ability to pay as such debts matured.

The Debtor is unaware of, and therefore does not presently intend to pursue, any actions based on either preferential or fraudulent transfers.

## ARTICLE XIII

## RETENTION AND ENFORCEMENT OF CLAIMS OR INTERESTS BELONGING TO THE DEBTOR OR ESTATE

Unless specifically released herein, Debtor retains and may, at its option, enforce any claim or interest belonging to itself or the estate, including but not limited to, any claim for avoidance of any transfer and recovery of any asset that could be avoided and recovered by a trustee under the code. Debtor may object to allowance of any claim, unless such claim, interest or objection has been compromised and such compromise has been approved by order of the Court entered prior to the Confirmation Date or provide for in this Plan. Any claim or interest recoverable under Section 550 of the Code will remain property of the Debtor after the Confirmation Date, and any property or funds recovered under such claim or interest will remain property of the Debtor until such property or funds are used to pay the expenses, including attorneys' fees, arising from the prosecution of such claim or interest. Debtor may, at its option, compromise any claim, interest or objection retained herein after the Confirmation Date without approval of the Court.

Subject to the limitations provided in 11 U.S.C. § 553, the Debtor may, but shall not be required to, setoff against any claim and the payment or other distribution to be made pursuant to the Plan with respect to such claim, claims of any nature whatsoever the Debtor may have against the holder of such claim. Neither the failure to setoff, nor the allowance of any such claim that the Debtor may have against such holder.

## ARTICLE XIV

7

## PLAN CONSUMMATION AND CONTINUING JURISDICTION

Following confirmation and substantial consummation, the Court may enter a final order and direct that this bankruptcy case be closed. The Plan will be fully consummated upon the fulfillment by the Debtor of all of its obligations for payment and distributions under the Plan.

The Bankruptcy Court shall retain jurisdiction over the Debtor's property and operations subsequent to the time of confirmation of the Plan for the purposes of enforcing the provisions of the Plan, including without limitation, enforcing compliance by the Debtor with the terms of the Plan and all stipulations made by the Debtor during the course of the bankruptcy case, and for the purpose of allowing Claims and hearing objections, if any, to Claims for estimating any contingent or unliquidated claims for conducting adversary proceedings with no property identified herein, including preference actions for the purpose of determining or resolving any defaults, disputes, ambiguities, or other similar maters under the Plan, and for the purpose of allowing administrative expenses, and any other matter relating to or arising under this bankruptcy case with respect to which bankruptcy jurisdiction is properly invoked.

## ARTICLE XV

## WAIVER AND RELEASE

Confirmation of the Plan shall constitute a complete waiver and release of all claims of all creditors against Debtor except as provided for in the Plan, and to the extent authorized by 11 U.S.C. § 1141. Confirmation of the Plan will bind creditors to accept payments provided for in the Plan, and will oblige the Debtor to make payments to creditors as provided for in this Plan. Creditors holding judgments against the Debtor on account of or with respect to pre-petition claims shall not take any action to enforce such judgments.

Respectfully submitted,


Rochester Service Corp. , LLC


Dated: 10/22/2007

_____
Hyder Jaweed, Chief Manager



_/e/ Chad Bolinske_____
Chad Bolinske (319430)
1660 South Hwy 100 Suite 508
St. Louis Park, MN 55416

8

# PLAN CONSUMMATION AND CONTINUING JURISDICTION

Following confirmation and substantial consummation, the Court may enter a final order and direct that this bankruptcy case be closed. The Plan will be fully consummated upon the fulfillment by the Debtor of all of its obligations for payment and distributions under the Plan.

The Bankruptcy Court shall retain jurisdiction over the Debtor's property and operations subsequent to the time of confirmation of the Plan for the purposes of enforcing the provisions of the Plan, including without limitation, enforcing compliance by the Debtor with the terms of the Plan and all stipulations made by the Debtor during the course of the bankruptcy case, and for the purpose of allowing Claims and hearing objections, if any, to Claims for estimating any contingent or unliquidated claims for conducting adversary proceedings with no property identified herein, including preference actions for the purpose of determining or resolving any defaults, disputes, ambiguities, or other similar maters under the Plan, and for the purpose of allowing administrative expenses, and any other matter relating to or arising under this bankruptcy case with respect to which bankruptcy jurisdiction is properly invoked.

## ARTICLE XV

## WAIVER AND RELEASE

Confirmation of the Plan shall constitute a complete waiver and release of all claims of all creditors against Debtor except as provided for in the Plan, and to the extent authorized by 11 U.S.C. § 1141. Confirmation of the Plan will bind creditors to accept payments provided for in the Plan, and will oblige the Debtor to make payments to creditors as provided for in this Plan. Creditors holding judgments against the Debtor on account of or with respect to pre-petition claims shall not take any action to enforce such judgments.

Respectfully submitted,


Rochester Service Corp. , LLC


Dated:  10/22/2007

Hyder Jaweed, Chief Manager



/e/  Chad Bolinske
Chad Bolinske (319430)
1660 South Hwy 100 Suite 508
St. Louis Park, MN 55416


8