UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

___

In re:

BKY 07-32664

Rochester Service Corporation, LLC,

Debtor.

___

**OBJECTION TO DEBTOR'S
DISCLOSURE STATEMENT**

___

Minnwest Bank Central (the "Bank") objects to the Disclosure Statement of Rochester Service Corporation, LLC, dated January 23, 2008, and filed on January 29, 2008 ("Disclosure Statement") and gives notice of hearing herewith.

The Court will hold a hearing on the Disclosure Statement and this objection at 2:00 p.m. on April 2, 2008, in Courtroom No. 7West, United States Courthouse, at 300 South Fourth Street, in Minneapolis, Minnesota.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. 5005 and Local Rule 5005-1(a). This matter is a core proceeding. The petition commencing this bankruptcy case was filed on July 23, 2007. The case is now pending in this Court.

The Bank objects to approval of the Disclosure Statement[1] because it contains inadequate information.

---

[1] On March 20, 2008, counsel for the Debtor routed an amended disclosure statement (March 20 Draft) to counsel for the Bank and for the U.S. Trustee that contained revisions made in response to items in the U.S. Trustee's Objection. Until a final draft of an amended disclosure statement is filed, the Bank asserts and maintains these objections to the Disclosure Statement. If the March 20 Draft, or any other draft of an amended disclosure statement

# I. STATEMENT OF FACTS

The Debtor is a debtor-in-possession pursuant to Section 1107 of the Bankruptcy Code. The Debtor has filed a disclosure statement and plan of reorganization.

The Bank is a secured creditor of the Debtor. The Bank holds a claim in the approximate amount of $2,891,543,[2] the basis of which is memorialized in a promissory note dated August 2, 2005, in the original amount of $2,900,000 (the "Note"). The Bank's claim is secured under a Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement dated August 2, 2005 (the "Mortgage") encumbering real property commonly known as the Trail Ridge Apartments in Rochester and legally described as Lot 3, Block 1, Campustown Subdivision, Olmsted County, Minnesota. The Mortgage was recorded in the office of the County Recorder for Olmsted County on August 10, 2005 as Doc. No. A-1071943. The Bank's claim is further secured by a lien in most or all of the Debtor's accounts, equipment, inventory, and general intangibles. Such security interest was the subject of a UCC financing statement filed with the Minnesota Secretary of State on August 19, 2005, as Doc. No. 20518415511. Finally, the Bank's claim is secured by a replacement lien in all of the real and personal property securing the Bank's secured claim and in all post-petition rents, proceeds, and replacements of said property, and such lien has the same dignity, priority and effect as the Bank's pre-petition lien.

The Debtor's Disclosure Statement is deficient as set forth below.[3] Due to the large number, the deficiencies are easier to address if first summarized in a list and subsequently

---

is filed, the Bank reserves all rights to clarify these objections as they relate to the filed amended document(s) and to raise further objections.

[2] Pursuant to the proof of claim filed.

[3] Some of the objections listed may be purely confirmation issues, or may be mixed disclosure and confirmation issues. The Bank raises all objections that may be appropriate to raise now in case they are disclosure issues and also because the Debtor, to address the confirmation issues, may elect to (or need to) amend the disclosure statement and modify the plan now, rather than after the plan and disclosure statement have been distributed to all creditors.

explained as appropriate. The deficiencies include the following:

1. U.S. Trustee's Objections.[4]

2. Lack of description of Debtor's assets and value of assets.

3. Failure to fully describe the Bank's claim, by failing to:

   a. state the amount of the Bank's claim;
   b. describe the components of the Bank's claim;
   c. describe the lien interests held by the Bank;
   d. describe the collateral in which the Bank holds those lien interests;
   e. describe the replacement lien granted to the Bank pursuant to the cash collateral stipulation and order;
   f. describe the collateral in which the replacement lien was granted;
   g. state that the Bank's lien interests have been properly perfected; and
   h. state that the Bank holds a first priority mortgage and security interest.

4. Confusing classification of the Bank's claim.

5. Inaccurate statement of the amount of the Bank's claim(s).

6. Failure to fully describe the treatment of the Bank's claim because it fails to:

   a. state the amount of the Bank's claim to be allowed;
   b. state the secured status of the claim;
   c. state, with specificity, the collateral to secure the allowed claim;
   d. state that the secured status of the claim will continue post confirmation;
   e. state the priority position of the lien interests of the Bank;
   f. state what acts, if any, are needed to memorialize the creation and perfection of the lien interests of the Bank;
   g. state, with clarity, the payments to be made on the claim, the commencement date of those payments, and the date that the payments are due;
   h. acknowledge the continuing viability of the various loan documents and agreements entered into pre-petition between the Debtor and the Bank;
   i. state the consequence of a default by the Debtor under the terms of the plan and the loan documents;
   j. acknowledge the continuing viability of the guaranty of the principal of the Debtor; and

---

[4]On March 5, 2008, counsel for the U.S. Trustee filed the U.S. Trustee's Objections to Proposed Disclosure Statement of Debtor dated January 29, 2008, ("U.S. Trustee Objection"). The Bank agrees with the merit of the objections outlined in the U.S. Trustee Objection, asserts them as its own objections, and incorporates the same by reference as if set forth herein. Because the Bank is making the objections independently, any withdrawal by the U.S. Trustee of all or any portion of the U.S. Trustee Objection does not constitute withdrawal of the objections by the Bank.

k.  acknowledge the Debtor's agreement to execute any documents reasonably necessary to carry out the intent of the plan.

7. Failure to specifically state that the plan contemplates refinance of the loan or sale of the property in three years.

8. Failure to provide information regarding the Debtor's efforts (both past and future) to sell or refinance.

9. Confusing repayment terms for the Bank's claims.

10. Inaccurate math regarding payment of the Bank's claims.

11. Failure to provide for costs as a component of the Bank's claims.

12. Failure to separately classify the claim of the judgment lien creditor.

13. Misstatements regarding post petition capital infusion.

14. Incomplete information regarding the nature of the post petition cash contributions.

15. Inadequate information regarding the uses of the post petition cash infusion.

16. Conflicting information regarding means of execution of plan – revenues vs. cash infusion.

17. Inadequate information regarding post petition cash infusion.

18. Inadequate and conflicting information regarding current and future equity owners and the source of consideration for new stock.

19. Inaccurate description, math and payment terms regarding property tax claim

20. Inadequate Financial Information

    a. Failure to include sufficient detailed historical financial information.
    b. Failure to include sufficient detailed financial projections:
       i. Failure to provide income information on per month basis for 2008.
       ii. Failure to provide sufficient line items to detail payment of claims.
       iii. Inadequate and confusing information.
       iv. Failure to include beginning cash and ending cash.

21. Conforming text of Disclosure Statement to liquidation analysis.

## II. EXPLANATION OF OBJECTIONS

The Bank's objections, to the extent necessary, are more fully explained below. The numbering and lettering system corresponds to the numbers and letters used in the list provided above.

**1. U.S. Trustee Objection.**

The U.S. Trustee Objection can be summarized as follows:

   a. Inadequate description of treatment of unsecured claims in Class 3.
   b. Insufficient information regarding the need for three classes of claims for Minnwest and lack of description of collateral securing claims.
   c. Inadequate and incorrect detail regarding the Minnwest Class 1 claim.
   d. Failure to specify whether interest will accrue and if so, at what rate, on Minnwest's Class 1B claim.
   e. Confusion regarding Class 2 claim of City of Rochester for property taxes and failure to specify the collateral and the rate at which interest accrues on the claim.
   f. Failure to disclose in the Disclosure Statement the priority taxes referenced on page 3 of the plan.
   g. Failure to include a Liquidation Analysis.
   h. Insufficient projections because illegible and failure to include line items for claim payments; explanation needed for Rochester Income Chart.
   i. Failure to disclose executory contracts and their treatment.
   j. Inaccurate description of vote needed to confirm plan pursuant to §1129(a).
   k. Numerous typographical errors causing confusion.
   l. Failure to describe tax consequences as required by §1125.
   m. Failure to provide sufficient historical and future information regarding capital investments made and to be made.

As noted above, the Bank independently asserts these objections, as described in the U.S. Trustee Objection.

**2. Lack of description of Debtor's assets and value of assets.**

The Debtor has failed to provide a complete description of the available assets and their value, one of the 19 items identified by this Court as items to include in a disclosure statement in *In re Dakota Rail* 104 B.R. 138 (Bankr. D. Minn. 1989). Presumably, when the liquidation analysis is provided in response to the U.S. Trustee Objection, this deficiency will be satisfied (assuming the liquidation analysis is sufficient).

5

### 3. Failure to fully describe the Bank's claim.

The Debtor has failed to fully describe the Bank's claim as follows:

   a.  *Failure to state the amount of the Bank's claim*:

The Plan, in the classification section, states the estimated amounts of claims of Class 1, Class 1A and Class 1B. The Plan, in the treatment section, does not state a fixed amount of the claims in any of the three classes. The filed Disclosure Statement states the amount of Class 1B claim but not the amount for the other two classes. The March 20 Draft states the amount of Class 1 and Class 1B claim, but not the amount of the Class 1A claim. The amount of the Bank's claim must be stated in all sections in both the disclosure statement and the plan.

   b.  *Failure to describe the components of the Bank's claim:*

The filed Disclosure Statement does not describe the general nature of the claim in each of the thre classes, as distinguished from each other, with the exception of Class 1B which is described as consisting of post petition arrears. The March 20 Draft has the same deficiency. The plan does describe the nature of each claim.

   c.  *Failure to describe the lien interests held by the Bank:*

The plan, the filed Disclosure Statement and the March 20 Draft all fail to state that the Bank holds a mortgage and security interest securing the claims of Classes 1A and 1B.

   d.  *Failure to describe the collateral in which the Bank holds those lien interests:*

The plan, the filed Disclosure Statement and the March 20 Draft all fail to <u>sufficiently</u> describe the collateral securing the claim of Class 1, and fail to describe, at all, the collateral securing the claims of Classes 1A and 1B.

   e.  *Failure to describe the replacement lien granted to the Bank*:

The filed Disclosure Statement, the March 20 Draft, and the plan all fail to state that the Bank was granted a replacement lien.

   f.  *Failure to describe the collateral in which the replacement lien was granted*:

The filed Disclosure Statement, the March 20 Draft, and the plan all fail to describe the collateral in which the replacement lien was granted.

   g.  *Failure to state that the Bank's lien interests have been properly perfected*:

The filed Disclosure Statement, the March 20 Draft, and the plan all fail to state that the Bank's lien interests have been properly perfected.

*h.     Failure to state that the Bank holds a first priority mortgage and security interest.*

The filed Disclosure Statement, the March 20 Draft, and the plan all fail to state that the Bank holds a first priority mortgage and security interest.

**4.     Confusing classification of the Bank's claim.**

The Debtor's classification of the Bank's claim does not make sense and is insufficiently defined. The Class 1 claim is said to be $2,828,966.80 plus accrued and unpaid interest. Neither the Disclosure Statement nor the plan state what this number represents (e.g. principal balance owed as of Filing Date; principal, interests and all costs as of Filing Date, etc.). Without that explanation, the scope of the three claims cannot be determined. For example, Class 1A is said to be pre-petition arrears in the amount of $62,000 plus accrued but unpaid interest. Depending on what the Class 1 claim consists of, the Class 1A claim may be duplicative of a part of the Class 1 claim. Class 1B is said to be post petition interest of $23,000. The Debtor has already defined Class 1 and Class 1A to be a stated dollar amount plus accrued but unpaid interest, but does not specify the date as of which the additional interest is to accrue or to have accrued. If the additional interest is accruing as of the Filing Date, then the Class 1B claim is duplicative of Class 1 and/or Class 1A. Separating a claim into pre-petition defaults and post petition defaults is a concept used in Chapter 13 for residential loans; the concept is not well used for a commercial loan in a Chapter 11 case as demonstrated by the Debtor's plan. If use of the concept is not discontinued, revisions are needed to more critically define the distinctions among the claims in each of the three classes.

**5.     Inaccurate statement of the amount of the Bank's claim(s).**

As best as can be discerned, the Debtor inaccurately states the amount of the Bank's claims in each of the three classes. At a minimum, the Debtor has inaccurately stated the amount of the post petition arrears claim in Class 1B because the Debtor has been making payments of approximately $15,000 per month during the case, and the Debtor has not taken those payments into account.

**6.     Failure to fully describe the treatment of the Bank's claim.**

The Disclosure Statement fails to fully describe the treatment of the Bank's claims as follows:

*a.     Failure to state the amount of the Bank's claim to be allowed*

The plan, the filed Disclosure Statement and the March 20 Draft do not state the allowed amount of the Bank's claim under the plan. The only information provided is the estimated amount of the claim. Because the plan is a new contract, it is important to have the claim amount, as allowed, explicitly stated.

7

*b.     Failure to state the secured status of the claim*

The Plan and the filed Disclosure Statement, as to Class 1A and Class 1B, do not state that the claims are secured.

*c.     Failure to state, with specificity, the collateral to secure the allowed claim*

The Plan states that the Class 1 claim is secured by "the real and personal property owned by the Debtor" and by a "mortgage lien on all property of the Debtor." The filed Disclosure Statement as to Class 1A and Class 1B does not describe the collateral at all. The March 20 Draft describes the collateral as "the Fairfield Village property." Each of these descriptions is inadequate. The description of the collateral should, at a minimum, contain enough information: (a) to identify the property; and (b) to meet the standards of Minnesota real estate and secured transaction law to create a lien interest. This deficiency is most easily addressed by reference in the Disclosure Statement and the plan to the loan documents and the collateral described therein and use of a defined term thereafter.

*d.     Failure to state that the secured status of the claim will continue post confirmation;*

*e.     Failure to state the priority position of the lien interests of the Bank;*

*f.     Failure to state what acts, if any, are needed to memorialize the creation and perfection of the lien interests of the Bank;*

*g.     Failure to state, with clarity, the payments to be made on the claim, the commencement date of those payments, and the date that the payments are due;*

*h.     Failure to acknowledge the continuing viability of the various loan documents and agreements entered into pre-petition between the Debtor and the Bank;*

*i.     Failure to state the consequence of a default by the Debtor under the terms of the plan and the loan documents;*

*j.     Failure to acknowledge the continuing viability of the guaranty of the principal of the Debtor; and*

*k.     Failure to acknowledge the Debtor's agreement to execute any documents reasonably necessary to carry out the intent of the plan.*

7.     **Failure to specifically state that the plan contemplates refinance or sale.**

The filed Disclosure Statement and the plan provides that the Bank's Class 1 claim will be paid in full with a balloon payment due at the end of the three years. To be able to pay off a $2,8000,000 claim, the Debtor likely will need to refinance the loan or sell the property. The

8

Disclosure Statement should make it clear that the plan is premised on refinance or sale in three years.

**8.     Failure to provide information regarding the Debtor's efforts (both past and future) to sell or refinance.**

As noted, the plan requires a balloon payment at the end of three years and contemplates either refinancing or selling the property. The ability of the Debtor to pay the balloon payment may be a confirmation issue bearing on the feasibility of the plan. However, in an ordinary situation, it is routine to require the Debtor to provide information to enable creditors to judge the ability of the Debtor to obtain new financing or to sell the property. In addition, because the Debtor has already been attempting to sell the property, the success or failure of the Debtor's past efforts bear on the Debtor's future ability to refinance or sell, and should be described in the Disclosure Statement.

**9.     Confusing repayment terms for the Bank's claims.**

The Debtor proposes that the Bank's claims be repaid according to the following timeframes: Class 1: three years; Class1A: two years; and Class 1B: five years. The Debtor further provides that Class 1 shall be paid in full at the end of the three year period, which, as noted above, presumably means either that the property will be sold or the loan refinanced. If so, at the time of sale or refinancing, the Class 1B claim will need to be paid in full to satisfy the lien securing that claim. Accordingly, it is misleading to state that the Class 1B claim has a 5 year term (extending beyond the three year balloon of the primary claim) when in fact, under the contemplation of the plan, the Class 1B claim will be paid off at the end of the three years upon sale or refinancing.

**10.    Inaccurate math regarding payment of the Bank's claims.**

Class 1A, a claim in the amount of $62,000, is to be paid, <u>with interest</u>, at a rate of $2,583 per month for 24 months. $2,583 x 24 = $61,992. The stated monthly payment amount for the terms specified is insufficient (a) to pay the principal amount of the claim ($62,000); and (b) to pay the interest to be charged. Accordingly, the Disclosure Statement presently is misleading and requires revision. The text regarding the Class 1B contains a similar problem.

**11.    Failure to provide for costs as a component of the Bank's claims.**

Section 506(b) states that an oversecured creditor is entitled to any reasonable fees, costs or charges provided for under the agreement under which the claim arises. The Bank's note, mortgage and security agreement provide for costs and attorneys fees. Based on the Court's recent valuation of the property at $3,700,000, the Bank is oversecured. The Bank has incurred costs in excess of $50,000. The filed Disclosure Statement and the plan do not provide for the allowance and payment of the Bank's costs and attorneys fees as a part of the Bank's claim.

**12.  Failure to separately classify the claim of the judgment lien creditor.**

The filed Disclosure Statement references a judgment obtained against the Debtor before the case was commenced and the intent to avoid the judgment lien as a preference.  The judgment is inaccurately identified in the Disclosure Statement as a judgment in favor of Southern Minnesota Regional Legal Services; the judgment is in favor of Bosteio M. Abdulle, Saido Abdi, Ibado Aden Sabriye, Fadumo I. Egal, Mahamoud Hassan, and Fahia Jimale. The Disclosure Statement should be revised to correctly identify the judgment. Second, based on the valuation of the property at $3,700,000, the judgment lien claim is presently (i.e. before avoidance) a fully secured claim and requires separate classification and treatment.

**13.  Misstatements regarding the source of post petition cash infusion.**

The Disclosure Statement states in Section 14, that the Debtor's principal, Hyder Jaweed, has made approximately $75,000 of advances to the Debtor post petition.

However, the March 20 Draft, in Section 10, states that Hyder Jaweed has made contributions of over $27,000 through Brooklane Apartment, a related entity, and has paid approximately $36,000 for post petition property taxes, also through related entities.  Notwithstanding that information in Section 10, Section 16 of the March 20 Draft, states that during the case, Hyder Jaweed advanced the Debtor $75,000, and may advance another $40,000 prior to confirmation.

Accurate information regarding the source (the specific identify of the person investing) and amounts of the post petition cash infusion must be provided and the conflicting information in the Disclosure Statement needs to be corrected.

**14.  Incomplete information regarding the nature of the post petition cash contributions.**

As noted above, the Disclosure Statement discloses that funds have been provided to the Debtor by either Hyder Jaweed or related entities (or both) post petition.  The Disclosure Statement identifies the cash provided as capital contributions.  However, the Debtor's monthly operating reports provided to the U.S. Trustee identify the cash provided as loans to the Debtor.  The nature of the cash contributions (i.e. loan or capital contribution) must be determined and the character of the infusion must be consistently disclosed in the Disclosure Statement and plan.

**15.  Inadequate information regarding the uses of the post petition cash infusion.**

Additional information is needed regarding the post petition cash infusion made.  The Debtor needs to disclose: (a) the dates of such infusions; (b) the amounts of such infusions, and (c) the use of the funds contributed.  This information is needed to determine (a) the ability of the Debtor to meet its operating expenses from its operating revenues; and (b) the likelihood that the Debtor will need cash infusions in the future.

**16.  Conflicting information regarding means of execution of plan – revenues vs. cash infusion.**

In Article VII, the plan states that that all distributions shall be funded by the Debtor's income from operations. However, the Disclosure Statement and the March 20 Draft states that all distributions shall be funded by the Debtor's income from operations <u>and</u> capital investments from Hyder Jaweed. It appears that in fact, a cash infusion is necessary to fund the plan. That being the case, the Disclosure Statement and plan must be amended to eliminate the discrepancy in information provided, and to provide the full details regarding the need for cash infusion, and the specifics regarding such infusion.

**17.     Inadequate information regarding post confirmation cash infusion.**

Additional information is needed regarding the contemplated post confirmation capital infusion. The information to be provided must include: (a) the projected dates of such infusion; (b) the projected amounts of such infusion; and (c) the anticipated use(s) of the funds contributed. This information is needed to determine (a) the ability of the Debtor to meet its obligations under the plan, and (b) the sufficiency of the contemplated infusions.

**18.     Inadequate and conflicting information regarding current and future equity owners and the source of consideration for new stock.**

The Disclosure Statement provides in Class 4, that the interests of the members shall be cancelled and new membership interests will be issued to the interest holders in consideration for advances to be made by Hyder Jaweed.

The Disclosure Statement further provides in Section 10, that the Debtor's interest holders shall subscribe for and receive new membership interest in consideration for the capital investments in the Debtor.

The March 20 Draft, in Section 10, provides that "these contributions [the $27,000 contributed by Brooklane Apartment and $36,000 for property taxes] are the basis for the interest holders to receive new stock in the reorganized debtor.

The documents are not clear on (a) the identity of the current stockholder(s) of the Debtor; (b) the identity of the future stockholder(s) of the reorganized Debtor; (c) the contributions (including date and dollar amount) to be made to purchase the stock in the reorganized debtor; and (d) whether the new stock is going to be purchased through (i) the post petition cash infusion already made; or (ii) post confirmation cash infusion; or (iii) both.

The Disclosure Statement should be amended to disclose all of the foregoing information.

**19.     Inaccurate description, math and payment terms regarding property tax claim.**

Debtor classifies the property taxes owed into Class 2: Priority Claims. The property taxes are a secured claim (pursuant to Minnesota law), rather than an unsecured priority claim. So it is incorrect to classify the property tax claim into a class for priority claims, or to label the property tax claim as a priority claim.

The Disclosure Statement states that the amount of the property tax claim is $18,827, and that the claim will be paid in 12 monthly installments of $1,568.91. $1,568.91 x 12 = $18,826.92. The payments required under the plan do not pay the principal amount of the tax claim in full.

As noted, pursuant to Minnesota law, the property tax claim is a secured claim. Under Minnesota law, property tax claims accrue interest and penalties. As noted above, Section 506 of the Bankruptcy Code provides that secured claims are entitled to interest and costs. Pursuant to the Bankruptcy Court's valuation of the property, the property tax claim is entitled to interest. The typical treatment is to pay interest on property tax claims at the statutory rate. The Disclosure Statement and plan fail to provide for interest on the property tax claim, and, based on the monthly payments for the term contemplated, the plan does not propose to pay the property tax claim in full.

**20.    Inadequate Financial Information**

The financial information provided by the Debtor is inadequate because (a) critical information is missing; and (b) the information provided does not contain sufficient detail, as follows:

*a.    Failure to include historical information.*

As noted in the U.S. Trustee Objection, the Debtor has failed to provide, as an exhibit to the Disclosure Statement, historical income statements. The Debtor should provide this historical information. The historical information provided should contain the same level of detail as provided in the Pro Forma Income Statement currently attached as an exhibit to the Disclosure Statement. The same level of detail is necessary to facilitate comparison of the historical information to the Debtor's projections.. The historical information provided should include pre-petition information for years or partial years ending December 31, 2005, December 31, 2006, and July 22, 2007[5]

*b.    Projections.*

The Pro Forma Income Statement attached to the Disclosure Statement is inadequate. The deficiencies include the following:

*(i)    Failure to provide income information on a per month basis for 2008.* Detail by month is needed for 2008. At a minimum, the financial information should be provided by month for the months commencing March, 2008 through three months past the projected confirmation dated. Information by month is needed to demonstrate that the Debtor will have the cash flow available to make the payments to administrative expenses claims required upon confirmation and the payment to unsecured creditors upon the three-month anniversary of the date of confirmation. Preferably, the information by month should be provided for each of the remaining months in 2008.

---

[5] For convenience, the 2007 pre-petition information could be cut off as of June 30, 2007.

*(ii)    Failure to include sufficient line items.* Line items are needed for each class of claims and for each type of administrative expense claim to reflect the payments to each class and type of claim pursuant to the terms of the plan. These line items should be placed after the Net Income line.

*(iii)    Inadequate and confusing information related to "Financial Expenses."* Under the heading "Financial Expenses" the expense items should be re-labeled to have more meaning directly tied to the terms of the plan. The current descriptions are: "Interest on mortgage;" "Interest on notes payable (long-term)"; "Interest on note payable (MRV)"; and "Miscellaneous financial expenses." It is unclear to what these titles relate.

*(iv)    Failure to include beginning cash and ending cash.* To enable creditors to determine the feasibility of the plan, the Debtor's beginning and ending cash position must be stated. The cash position information should be provided, (a) on a per month basis for 2008, and (b) on a per year basis for each year of the plan, commencing 2009.

**21.    Conforming text of Disclosure Statement to liquidation analysis.**

After the liquidation analysis is completed, the Disclosure Statement must be amended, as appropriate, to conform the text of the Disclosure Statement to the information obtained from the liquidation analysis. Section 13 of the Disclosure Statement discloses that the Debtor believes that the general unsecured creditors and priority claimants will receive no recovery upon liquidation. After completing the liquidation analysis, using as the starting point the $3.7 million value of the property, the Disclosure Statement may need to be amended.

All of the foregoing deficiencies must be corrected, and all of the information identified as missing must be provided, to enable creditors to judge the feasibility of the plan and the likelihood of confirmation based on the Bankruptcy Code's requirements.

### III.    STATEMENT OF LAW AND ARGUMENT

The Disclosure Statement should not be approved as adequate based on the statutory law and case law regarding adequacy of disclosure statements as applied to the Debtor's Disclosure Statement.

### A.    STATEMENT OF LAW

Rule 3017 of the Federal Rules of Bankruptcy Procedure provides that the court shall hold a hearing on at least 25 days' notice to consider the disclosure statement and, following the

hearing, the court shall determine whether the disclosure statement should be approved. Section 1125(b) provides that the Bankruptcy Court shall determine whether the disclosure statement contains adequate information. "Adequate information" is defined in Section 1125(a) to mean:

> information of a kind, an in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests[6] in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan.

*11 U.S.C. §1125(a)(1)*. "In determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interests, and the cost of providing additional information." *11 U.S.C. §1125(a)(1)*.

The purpose of a disclosure statement is to give creditors information based upon which the creditors can decide whether to accept the plan. *In re Dakota Rail, Inc.* 104 B.R. 138, 142 (Bankr. D. Minn. 1989). The "statutory definition of 'adequate' information' leaves the bankruptcy court wide discretion to determine on a case by case basis whether a disclosure statement contains adequate information without burdensome, unnecessary and cumbersome detail." *Dakota Rail*, 104 B.R. 138, 143. *See also In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990) ("Generally a disclosure statement must contain all pertinent information bearing on the success or failure of the proposals in the plan of reorganization.") However,

---

[6] An "investor typical of holders of claims or interests of the relevant class" is defined in Section 1125(a)(2) to mean an 'investor having (A) a claim or interest of the relevant class; (B) such a relationship with the debtor as the holders of other claims or interest of such class generally have; and (C) such ability to obtain such information from sources other than the disclosure required by this section as holders of claims or interests in such class generally have.' 11 U.S.C. §1125(a)(2).

> . . . the bankruptcy court must distinguish between (1) whether the disclosure statement contains adequate information to allow the typical creditor to make an informed decision on how to vote, and 2) whether the Plan can be confirmed. Only where the disclosure statement *on its face* relates to a plan that cannot be confirmed does the court have an obligation not to subject the estate to the expense of soliciting votes and seeking confirmation of the plan; otherwise, confirmation issues are left for later consideration. (citation omitted) Allowing a facially nonconfirmable plan to accompany a disclosure statement is both inadequate disclosure and a misrepresentation.

*Dakota Rail at 143*.

The Court in *Dakota Rail* gave some guidance on specific issues central to most reorganization cases: cash infusion and financial projections. Regarding projections, the Court stated:

> A disclosure statement is misleading where it contains glowing opinions or projections, having little or no basis in fact and/or contradicted by known fact. *In re Copy Crafters Quickprint, Inc.* 92 B.R. 973, 981 (Bankr. N.D. N.Y. 1988) (court is reluctant to approve a disclosures statement premised upon unsupported and self-serving valuations); *In re Civitella*, 15 B.R. 206, 208 (Bankr. E.D. Pa 1981) (mere allegations or opinions unsupported by factual information in the disclosure statement do not meet the standard of adequate information);

*Dakota Rail at 149*. As to issues related to a proposed cash infusion, the Court cited the following:

> *See In re Unichem*, 72 B.R. 95, 97 (Bankr. N.D. Ill), aff'd 80 R.B. 448 (N.D. Ill 1981) (disclosure statement did not contain adequate information where proponent's cash infusion to debtor's estate was illusory).

*Dakota Rail at 145*.

### B. ARGUMENT

The Debtor's Disclosure Statement does not meet the standards of adequacy set forth in the Bankruptcy Code and *Dakota Rail*. The Debtor's Disclosure Statement does not contain information of such type and detail as to enable creditors to make an informed judgment about the plan. The information missing is detailed in Section II herein. Without the information noted, creditors are not provided with sufficient information to cast an informed vote on the plan.

## IV. RESERVATION OF RIGHTS

The Bank reserves the right to make additional objections to the Disclosure Statement in the event that the hearing on this Disclosure Statement is continued, or in the event that the Debtor files an amended disclosure statement. Further, the Bank reserves all rights related to objections to confirmation of the plan of reorganization. The objections noted herein constitute objections to the adequacy of the disclosure statement. The Bank is not required, at this time, to state its objections to confirmation of the plan. The Bank, intends, as appropriate, to submit its objections, if any, to confirmation of the plan, specifically reserves the right to do so, and does not waive its right to do so by not stating them herein.

## V. NOTICE OF WITNESS

Because the subject matter before the Court is the adequacy of the Debtor's proposed disclosure statement and all issues are drawn from the Debtor's own pleading, factual disputes are not likely to arise and accordingly, witnesses to give testimony as to factual issues will not be necessary. To the extent that an objection asserted herein does result in a factual issue, notice of witnesses will be given at that time.

**WHEREFORE,** the Bank asks the Court for an order granting the following relief: (a) Denying approval of the Disclosure Statement; and (b) Granting any other relief the Court deems just and proper.

STEIN & MOORE, P.A.

Dated: March 24, 2008         By: Mary L. Cox
                                 Mary L. Cox (#176552)
                                 332 Minnesota Street, Suite W-1650
                                 St. Paul, MN  55101
                                 651-224-9486
                                 651-223-5212

```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF MINNESOTA
```

In re:

                                                      BKY 07-32664

Rochester Service Corporation, LLC,

        Debtor.

## UNSWORN CERTIFICATE OF SERVICE

The undersigned, an employee of STEIN & MOORE, P.A., declares that on the date indicated below, she served, either contemporaneously with the electronic filing of the pleadings noted below or prior to electronic filing, the following:

1.     Objection to Debtors' Joint Disclosure Statement; and
2.     Unsworn Certificate of Service

on the entities named below and/or on the attached service list, by the following methods: (1) as to registered users of the ECF (Electronic Case Filing) System, by email notification under CM/ECF on the day the pleadings are e-filed with the Court, as identified by use of the phrase "Via ECF electronic notice" and (2) as to all other parties, by enclosing true and correct copies of same in an envelope, properly addressed and postage prepaid, and depositing same in the United States mail, unless otherwise noted (such as delivery by facsimile transmission or messenger):

| | |
|---|---|
| Chad J. Bolinske, Esq.<br>*Via ECF electronic notice*<br>chad.bolinske@bolinskelaw.com | Nicholas J. Eugster, Esq.<br>*Via ECF electronic notice*<br>neugster@mandklaw.com |
| U.S. Trustee<br>*Via ECF electronic notice*<br>ustpregion12.mn.ecf@usdoj.gov | Michael Fadlovich<br>*Via ECF electronic notice*<br>michael.fadlovich@usdoj.gov |

And I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: March 24, 2008                                             Signed: /e/ Rose E. Grout
                                                                                           Rose E. Grout